Filed 9/27/21  P. v. Jimenez CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

JESSE JIMENEZ et al.,

    Defendants and Appellants.

E073455

(Super.Ct.Nos. FWV19000409 & FWV19000410)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Dan W. Detienne, Judge.  Affirmed with directions.

James M. Kehoe, under appointment by the Court of Appeal, for Defendant and Appellant Jesse Jimenez.

Tanya Dellaca, under appointment by the Court of Appeal, for Defendant and Appellant Nicolas Mora.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

1

Following a bench trial, Jesse Jimenez and Nicolas Mora were convicted of actively participating in a criminal street gang (Pen. Code, § 186.22, subd. (a) (§ 186.22(a)), and Mora was convicted of first degree burglary (Pen. Code, § 459; unlabeled statutory citations are to this code). Defendants admitted that they suffered a prior serious felony conviction (§ 667, subd. (a)(1)) and a prior strike conviction (§§ 1170.12, subds. (a)-(d), 667, subds. (b)-(i)), and Jimenez admitted that he had served a prior prison term within five years (§ 667.5, subd. (b)). Jimenez was sentenced to 12 years in state prison, and Mora was sentenced to 18 years and four months in state prison.

On appeal, Jimenez and Mora challenge the sufficiency of the evidence supporting their convictions for actively participating in a criminal street gang. Defendants also argue and the People concede that a prior prison term enhancement imposed on Jimenez should be stricken and that Mora's sentence for the gang offense should be stayed under section 654. We agree with the parties on both points and otherwise affirm the judgments.

BACKGROUND

On the night of September 30 to October 1, 2018, several individuals broke into Garcia's Wood Work, a company that makes wooden pallets in Fontana, California. The intrusion awakened an employee who lived at the work site, and the intruders bound, gagged, beat, and threatened to kill him. He was later treated for head injuries and a broken finger. The intruders also took his wallet and cell phone and the keys to his pickup truck.

After the intruders left, the employee freed himself, walked to a neighboring property, and had the neighbor call the owner of Garcia's Wood Work. The employee then returned to the pallet yard. N.G., the manager of Garcia's Wood Work, arrived shortly thereafter.

N.G. found that the gate to the pallet yard had been rammed open, and two trucks, each loaded with 704 pallets, were missing. Each pallet was worth six to eight dollars, so the value of the cargo on the two trucks was over $8,000.

N.G. sent several family members to other local pallet yards to attempt to find the missing trucks and pallets. In particular, N.G. called his brother-in-law at about 2:10 a.m. and sent him to a pallet yard in Riverside, California, operated by N.G.'s uncle, Dolores Garcia, because "there was issues" between N.G.'s father (the owner of Garcia's Wood Work) and Garcia. The brother-in-law saw one of the stolen trucks at the Riverside pallet yard at about 3:00 a.m., and the truck was not then carrying any cargo. The brother-in-law called N.G. and told him that the truck was at the Riverside yard. Then, on his way home from the Riverside yard, the brother-in-law saw the other stolen truck, also empty, parked on a side street.

When sheriff's deputies arrived at Garcia's Wood Work, N.G. conveyed the information he had received from his brother-in-law. The deputies then went to the Riverside pallet yard to investigate. While they were there speaking with N.G.'s uncle, a vehicle pulled into the driveway of the yard. Jimenez was driving, and there were three other individuals in the car. When one of the deputies walked toward the car, Jimenez got out and walked rapidly away. The deputy detained Jimenez and searched the area for

3

the rest of the car's occupants, who had scattered. The deputy found Mora hiding among the pallets in the yard and arrested him. Two more individuals were arrested after being found hiding in the yard.

Surveillance footage from Garcia's Wood Work showed that one of the intruders wore a mask and the other wore a dark-colored bandana covering his face. A deputy searched Mora's pockets and found a blue bandana and a pair of black latex gloves that were identical to a black latex glove found outside the trailer of the employee who was attacked at Garcia's Wood Work. A blue bandana also was found inside of the vehicle in which Jimenez and Mora arrived at the Riverside yard.

In interviews with law enforcement and testimony at trial, Garcia gave several different descriptions of his role in the break-in and theft of the pallets from Garcia's Wood Work. Garcia initially claimed that he did not know anything about the stolen trucks and had no issues with his brother, the owner of Garcia's Wood Work. He then admitted that he had lied when he said he knew nothing about the stolen trucks, and he said that he came to his pallet yard because an employee called him and told him two trucks had arrived at the yard, so "he stopped by to check." He then admitted that was a lie as well. Garcia then said that he had "screwed up and made a mistake of buying stolen pallets," but "he did not know the pallets belonged to his brother until after he bought them." He said that he was at his pallet yard when the trucks arrived; one of the trucks was driven by Mora, and Garcia opened the gate to let the trucks in and then helped unload the pallets. Garcia claimed that Mora, whom Garcia has known since Mora "was little," offered to sell him the stolen pallets, and Garcia agreed to buy them.

4

At trial, Garcia testified with immunity and changed his story again. He claimed that around 3:00 a.m. on October 1, 2018, he received a phone call from an unidentified man offering to sell him pallets. He then went to his pallet yard around 3:20 a.m., and there were already two trucks waiting outside the yard. The trucks were accompanied by two people Garcia had never seen before. Garcia and one of his employees unloaded the pallets from the trucks. Garcia and the seller(s) never agreed on a price, and once all of the pallets were unloaded, the two unknown individuals left in the trucks without getting paid. The trial court did not find Garcia's testimony credible.

A search of a detached garage at Jimenez's residence in San Bernardino, California revealed papers bearing numerous drawings of clowns and one with the initials "H T," as well as a T-shirt with the word "Pomona" on it. According to someone else who resided at the property, Jimenez lived in the garage. The garage contained correspondence addressed to Jimenez. The T-shirt was not new and appeared a "bit old"; the law enforcement officer who found it did not verify whether it was Jimenez's size.

Mora resided at a home in Fontana, California with three other people. A bedroom identified by another resident as Mora's contained a paper bearing the words "Happy Town cartoon" in "[t]agging style writing" and "Happy Town Pomona."

Jimenez had several tattoos: "Happy Town Pomona" on his arm, clown faces on his shoulder, and "Happy Town Pomona" on his back. Mora also had tattoos: a clown and the words "Just clowning" on his back, and "Mora" with the letters "H and T " within it.

Officer Franzesco Sacca testified as an expert on the Happy Town gang, which he described as a criminal street gang with approximately 100 members located in the city of Pomona, California. Happy Town's primary activities include committing robberies and carjacking, selling narcotics, and illegally possessing firearms. It is not uncommon for gang members to live outside of the gang's territory or to commit crimes outside of that territory.

Happy Town's common signs and symbols include: "Happy Town Pomona," "HTP" and varied combinations of those letters, clowns, and smiley faces. Happy Town members identify themselves by the color blue, and they wear attire associated with the Houston Astros baseball team. Every time Sacca searched a Happy Town gang member's residence he found Happy Town gang-related indicia, including photographs with other gang members and drawings of Happy Town's common signs and symbols, including the letters "HTP," smiley faces, and clowns.

Sacca had never met or seen Jimenez or Mora or heard about either of them at any law enforcement intelligence meetings about Happy Town. There were no field identification cards for either Jimenez or Mora, but the police department does not normally have such cards for every member of a gang. Not all law enforcement officers fill out field identification cards when encountering suspected gang members. After Sacca investigated this case, he did not notice Mora's photograph in any Happy Town-related social media posts for other cases he was investigating. Sacca did not search social media for any postings by Mora.

On the basis of the police reports and testimony in this case, Sacca opined that Jimenez and Mora were active participants in Happy Town. Sacca based his opinion on Jimenez's and Mora's tattoos, the drawings found at Jimenez's residence, the drawing found at Mora's residence, and the fact that both men were housed in general population in county jail. Sacca would not expect to find gang-related paraphernalia at a nonactive gang member's residence. Sacca did not have any knowledge about the age of Mora's tattoos, except that they were not "very recent." On social media, Happy Town gang members use the hashtag "Just Clowning."

Sacca opined that the nature of the underlying offense also tended to show that Jimenez and Mora were active Happy Town participants because the offense required "a lot of manpower," which a gang provides in the form of "trusted fellow criminals." The fact that Jimenez and Mora committed the offense together also supported Sacca's belief that they were active participants in Happy Town. Sacca further testified that active participants in gangs are aware that members of the gang commit crimes and are frequently around other members of their gang.

In Sacca's experience, only active gang members would be housed in the general population of the county jail. Former gang members with gang tattoos housed in county jail would be placed in protective custody, and not the general population of the jail, because they might otherwise become targets of violence by members of their former gang. At the same time, Sacca testified that he had never worked at a jail and that inmates are typically opposed to being placed in protective custody "for any reason."

7

Gang members can drop out of a gang by being "jumped out" or renouncing membership while in custody. Certain crimes, such as those against children, will result in lost membership. Dropouts from a gang do not associate with active members of the gang. Some older gang members "stop and have families" at some point. Sacca did not believe that a member could separate from a gang "without being jumped out physically" while remaining in "good standing" with the gang. Sacca did not know whether Happy Town allowed older members to "age[] out" of the gang and still remain in good standing.

DISCUSSION

A. *Sufficiency of the Evidence*

Jimenez and Mora argue that the record does not contain substantial evidence that they were active participants in the Happy Town gang and knew that Happy Town engaged in a pattern of criminal activity.[1] The arguments lack merit.

"In reviewing a sufficiency of the evidence claim, our role is limited. We review the entire record to determine whether it discloses reasonable and credible evidence to allow a rational trier of fact to determine guilt beyond a reasonable doubt." (*People v. Cardenas* (2020) 53 Cal.App.5th 102, 119, fn. 11 (*Cardenas*).) "We draw all reasonable inferences in favor of the judgment." (*Ibid.*) "Matters of credibility of witnesses and the weight of the evidence are ""the exclusive province"" of the trier of fact." (*Ibid.*)

---

[1] As the People correctly point out, Jimenez argues only that there is insufficient evidence of active participation. We nonetheless address the sufficiency of the evidence of active participation and awareness of the gang's pattern of criminal activity as to both defendants because the analysis is the same as to both.

8

"The elements of the gang participation offense in section 186.22(a) are:  First, active participation in a criminal street gang, in the sense of participation that is more than nominal or passive; second, knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity; and third, the willful promotion, furtherance, or assistance in any felonious criminal conduct by members of that gang." (*People v. Rodriguez* (2012) 55 Cal.4th 1125, 1130 (*Rodriguez*); § 186.22(a).)  "A person who is not a member of a gang, but who actively participates in the gang, can be guilty of violating section 186.22(a)." (*Rodriguez*, *supra*, at p. 1130.)  "Mere active and knowing participation in a criminal street gang is not a crime." (*Ibid.*)  "A defendant's active participation must be shown at or reasonably near the time of the crime." (*People v. Garcia* (2007) 153 Cal.App.4th 1499, 1509.)

Substantial evidence shows that Jimenez and Mora were active participants in Happy Town, a criminal street gang, when the underlying burglary was committed.  The prosecution's gang expert on Happy Town opined that defendants were active participants in Happy Town, which itself constitutes substantial evidence.  (See *People v. Gonzalez* (2021) 59 Cal.App.5th 643, 649 ["Expert opinion can support a gang enhancement under section 186.22, subdivision (b)(1)"].)  In addition, defendants both had Happy Town gang-related tattoos, and various items (drawings, writings, and a T-shirt) with Happy Town gang-related content were found in their homes soon after they were arrested.  Defendants do not dispute the gang-related nature of their tattoos—"Happy Town Pomona," "Just clowning," the initials "H and T," and clown faces—or the content of the paperwork found in their residences—drawings of clowns and writings

9

containing the initials "HT," "Happy Town cartoon," and "Happy Town Pomona." Sacca opined that nonactive gang members would not keep gang-related paraphernalia, and he confirmed that he had found similar gang-related drawings when searching the residences of other Happy Town gang members. The trial court could reasonably infer from this evidence that Jimenez and Mora were active participants in Happy Town when the burglary was committed.

Additionally, when defendants were arrested, Mora had a blue bandana in his pocket, and another blue bandana was found in the vehicle from which defendants fled at the Riverside pallet yard. The trial court could reasonably infer that the blue bandana in the vehicle belonged to Jimenez, as he was one of the vehicle's occupants. Given the evidence that Happy Town members identify themselves by the color blue, the trial court could reasonably infer that defendants possessed the blue bandanas because they were Happy Town members.

Moreover, defendants were housed in general population in jail. As Sacca explained, nonactive gang members with gang-related tattoos are not housed in general population because of the risk of violence against them from active gang members. Given defendants' gang-related tattoos identifying their affiliation with Happy Town, defendants' placement in general population supports the reasonable inference that they were active members of Happy Town. From all of this evidence, the trial court could reasonably infer that Jimenez and Mora were active participants in a criminal street gang when the offense was committed.

Defendants argue that the evidence was insufficient because of various nonincriminating reasonable inferences that could have been drawn from the evidence. They suggest that the following reasonable inferences were supported by the evidence: Defendants' tattoos could have been old, thus demonstrating only a past association or membership with Happy Town; the gang-related items in their homes could have been keepsakes or could have belonged to other residents; and defendants could have been former Happy Town members who were not at risk while being housed in general population, because Sacca did not know how Happy Town treats "aged out" members. But in conducting substantial evidence review, we draw all reasonable inferences in support of the judgment, not against it. (*Cardenas*, *supra*, 53 Cal.App.5th at p. 119, fn. 11.) We consequently are concerned only with whether ""'"the circumstances reasonably justify the trier of fact's finding."'"" (*People v. Kraft* (2000) 23 Cal.4th 978, 1054.) When evidence reasonably justifies the trier of fact's findings, as the evidence does here, "'the opinion of the reviewing court that the circumstances might also reasonably be reconciled with a contrary finding does not warrant a reversal of the judgment.'" (*People v. Thomas* (1992) 2 Cal.4th 489, 514.)

Comparing this case with other cases in which sufficient evidence of active participation was found (see *People v. Castenada* (2000) 23 Cal.4th 743, 752-753; *People v. Martinez* (2008) 158 Cal.App.4th 1324, 1331), defendants also argue that the evidence of active participation here is insufficient because some evidence present in those other cases was not present here. For example, (1) defendants did not admit that they were Happy Town members, (2) there was no evidence that defendants had

11

previously been identified by law enforcement as possible Happy Town members, (3)

defendants had no prior gang-related convictions, (4) the Happy Town gang expert had

never heard of or seen defendants,  and (5) there was no evidence of Houston Astros

attire found at Jimenez's residence.

Defendants' argument lacks merit.  "'When we decide issues of sufficiency of

evidence, comparison with other cases is of limited utility, since each case necessarily

depends on its own facts.'"  (*People v. Casares* (2016) 62 Cal.4th 808, 828, overruled on

another ground in *People v. Dalton* (2019) 7 Cal.5th 166, 214.)  Section 186.22(a) does

not require the presence of any particular type of evidence to support a finding of active

participation.  "Our review tests whether the evidence was sufficient, not whether

hypothetical evidence would have strengthened the prosecution's case."  (*People v.

Vargas* (2020) 9 Cal.5th 793, 821-822.)  The absence of hypothetical stronger evidence

therefore does not undermine the sufficiency of the evidence presented here.[2]

Defendants also argue that Sacca's testimony that Jimenez and Mora were active

participants in Happy Town does not constitute substantial evidence because the facts on

which Sacca's opinion was based are themselves insufficient.  The argument lacks merit.

As we have already explained, the facts relied on by Sacca—defendants' tattoos, the

---

[2]    Defendants reliance on *People v. Ramirez* (2016) 244 Cal.App.4th 800 as having
similar facts is misplaced.  *Ramirez* concluded that the evidence of active participation at
the preliminary hearing was insufficient to support a charge under section 186.22(a).  (*Id.*
at p. 817.)  But the only evidence presented there was one photograph of the defendant in
the gang's colors and two tattoos that did not identify a specific gang but generically
referred to the gang lifestyle (three dots and an incomplete Aztec calendar).  (*Id.* at
pp. 807-808, 817.)  Defendants' tattoos were not similarly ambiguous, and there was
substantial additional evidence that they were active participants in Happy Town.

12

gang-related drawings and writings found in defendants' residences, and defendants' placement in the general population in jail—constitute substantial evidence that defendants were active participants in Happy Town when the burglary was committed, so Sacca's opinion that they were active participants is both unnecessary and adequately supported by those same facts.

We also reject defendants' argument that there was not sufficient evidence supporting the second element of the offense, namely, that defendants possessed knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity. Defendants point out that there was no evidence that they "ever admitted or said anything indicating either had actual, current knowledge of the gang's activities" or that either of them "had any knowledge that the gang's members engage in or have engaged in a pattern of criminal gang activity." But an admission from defendants was not necessary. Sacca testified that Happy Town's primary activities are robbery, narcotics sales, and illegal firearm possession. He also testified that active participants in a gang are aware that other members of the gang commit crimes. Given that testimony, the trial court could reasonably infer from the evidence of defendants' active participation in Happy Town that defendants knew that Happy Town's members engage in or have engaged in a pattern of criminal gang activity.

For all of these reasons, we conclude that sufficient evidence supports defendants' convictions under section 186.22(a).

13

B. *Section 654*

The trial court sentenced Mora to 12 years for first degree burglary (§ 459; count 1) and one year and four months for being an active participant in a gang (§ 186.22(a); count 3). Section 654 "'prohibits multiple punishment for the same "act or omission."'" (*People v. Correa* (2012) 54 Cal.4th 331, 337.) Mora argues, the People concede, and we agree that under *People v. Mesa* (2012) 54 Cal.4th 191, 197-198, the trial court should have stayed Mora's sentence for count 3. It was error to punish Mora for the burglary and again for committing that offense while acting as a gang member. (*Ibid.*) We therefore direct the trial court to stay Mora's sentence of one year and four months for his conviction under section 186.22(a).

C. *Prior Prison Term*

Effective January 1, 2020, while this appeal was pending, Senate Bill No. 136 (2019-2020 Reg. Sess.) (Stats. 2019, ch. 590) amended section 667.5, subdivision (b), to restrict imposition of the one-year prior prison term enhancement to sexually violent offenses. (§ 667.5, subd. (b).) Jimenez's underlying conviction, for which the trial court imposed the one-year enhancement, was not a sexually violent offense. The parties agree and this court has already held that Senate Bill No. 136 applies retroactively to those like Jimenez whose sentences were not final when Senate Bill No. 136 became effective. (*People v. Chubbuck* (2019) 43 Cal.App.5th 1, 13-14; *People v. Cruz* (2020) 46 Cal.App.5th 715, 738-739.) We consequently direct the trial court to strike the one-year prior prison term enhancement for Jimenez.

14

DISPOSITION

For Jimenez, the trial court is directed to strike the one-year prior prison term enhancement. For Mora, the trial court is directed to stay the sentence on his conviction under section 186.22(a). The trial court is directed to prepare new abstracts of judgment reflecting the corrected sentences and to forward copies of the new abstracts of judgment to the California Department of Corrections and Rehabilitation. In all other respects, the judgments are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MENETREZ
J.

We concur:

MILLER
Acting P. J.
CODRINGTON
J.